## PEREY v. PEREY MFG. CO.

Circuit Court of Appeals, Second Circuit.
December 5, 1927.

No. 81.

Patents ⊙⇒328—1,307,317, claim 1, for turnstile, held invalid for anticipation.

Perey patent, No. 1,307,317, claim 1, for a turnstile which could rotate only in one direction when released by an operator, held invalid, because of anticipation.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit by Frank J. Perey against the Perey Manufacturing Company. Judgment for plaintiff (17 F.[2d] 774), and defendant appeals. Reversed.

Appeal by the defendant from an interlocutory decree of the District Court for the Eastern District of New York upon final hearing, holding valid and infringed claim 1 of patent 1,307,317, to Frank Joseph Perey.

The invention concerns a turnstile which can only rotate in one direction, and cannot do that unless released by an operator. The specifications disclose a solid head, to the top of which four arms are fixed at intervals of 90 degrees; also in this head and beneath the arms are four notches, into which a bolt slides radially under the action of a spring, whenever the bolt registers with any of the notches. The stile is then locked, and in order to let a person pass the bolt must be withdrawn by some suitable means, of which the disclosure suggested a treadle. As soon, however, as the treadle is released, the bolt will fly back into the notch, unless meanwhile the stile has rotated far enough to put the notch and bolt out of register. To guard against the bolt's return, the patentee provides a shutter, operating by gravity, which falls across the opening of the notch as soon as the bolt leaves the notch, and thus checks its return. As the arms rotate, the bolt moves along the periphery of the head in which the notches are sunk, and upon approaching a second notch it sweeps up the shutter and uncovers the notch.

A "detent" is provided to prevent the counter rotation of the stile, which consists of a ratchet and pawl, operating on the under surface of the head. There is also a mechanism for retarding and accelerating the rotation of the arms, which need not be described.

Upon this disclosure the following claim in suit was obtained:

"1. A turnstile, comprising a single rotatable member, having the arms of the turnstile fixed to its upper end and provided with locking notches, corresponding in number and spacing with the said arms, a spring-actuating locking bolt adapted to automatically engage each successive notch, means for disengaging the bolt to free the rotating member, and an automatic check on the return of the locking bolt coacting to prevent reëngagement until the turnstile has performed a complete operation."

It does not appear that the invention as disclosed had ever been used, but the defendant has manufactured for a subway company in New York about 300 stiles, which contain the elements of the claim in modified form. This stile has a rotating head, carrying the arms, a "detent," and a retarding and accelerating mechanism. The head has no notches, properly speaking, but square holes, inside the circumference, into which a spring-actuated bolt slips back and forth in a plane normal to that of rotation. At the side of the bolt, and at its end, a spring catch is pivoted, which, when open, makes the end of the bolt too large to enter the hole. The under face of the head is provided with four cams, on which the bolt rides between holes, as the head rotates. The high end of one cam is at one side of a hole, and the low end of the last cam is on the opposite side. Whenever the bolt moves into registry with a hole, the high side of the next cam forces the catch close to the side of the bolt, whose end thus becomes of the same size as the hole, and thereupon enters, locking the stile. When the bolt is withdrawn, however, as soon as it clears the high side of the next cam, the

catch is released and expands, thereafter preventing the re-entry of the bolt.

The art was full of turnstiles, dating back more than 50 years before the application in suit. A common form had a ratchet of four teeth, spaced at 90 degrees, and a pawl to engage them and hold the stile until it was released. To do this the pawl was disengaged and held till the stile had rotated so far that the pawl had cleared the tooth. Against counter rotation a "detent" was commonly provided, consisting of an independent pawl and ratchet, operating in reverse. In most of these there was neither catch to hold the pawl when raised, nor bolt and notch to reinforce the "detent." However, the defendant found and put in evidence certain other references nearer to the specifications.

In Brady's patent, 417,141, the release mechanism consisted of a pawl and ratchet, of common construction, except that the end of the pawl carried a pivoted member, such that, when the pawl was raised above a tooth, it would engage the top of the tooth and stop the pawl's descent. Brady's release mechanism was not, however, in the head, and the pawl did not act as a bolt against counter rotation, first, because its head was not so shaped, and, second, because there was no notch in the ratchet into which it could lock. A patent to Williams, 560,386, had the release mechanism in the head, but it was a pawl and ratchet without automatic check when the pawl was raised, and the pawl would not lock the stile in both directions.

In the companion cause argued herewith the defendant also put in evidence a British patent to Ellison, 4,752 (1906), which showed the notch and bolt device in the base, but which had no automatic check. It also introduced a British patent to Langslow, 24,-135 (1909), having both automatic check and notch and bolt, but both in the base. In this disclosure the bolt was withdrawn by a magnet; otherwise, the patented features were mechanical. It also introduced a patent to Kleinbaum, 1,022,684, having notch and bolt and automatic electric check, both in the base. The bolt was here also withdrawn by a magnet, whose actuating circuit was completed by a coin. Since the current continued to flow while the coin remained in place, the bolt was held for that interval. As the stile revolved, the notch passed out of register with the bolt, and, by a mechanism not necessary to describe, the rotation of the disk completed a secondary circuit, which released the coin, broke the circuit, which checked the bolt, and allowed it to spring back, but

now, instead of engaging the notch, it pressed against the periphery of the disk. Further rotation of the stile eventually brought the bolt into register with a second notch.

Finally, the defendant put in evidence a patent to Noe, 1,035,462, which contains notch and bolt and automatic check, all combined in the head, and all mechanically designed. This would have been a complete anticipation, if its operability were certain. However, it was a complicated mechanism, and in his affidavits in rebuttal the plaintiff attacked it as inoperable. The issue so raised was never tried, as the companion cause arose only upon motion for a preliminary injunction.

Upon the argument of this appeal the plaintiff requested that the four patents last mentioned should be treated as parts of this record, so that both causes might be disposed of at one time and upon the same showing. He reserved, however, his objection to Noe's patent.

Cavanagh & James, of New York City, for appellant.

Hauff & Warland, of New York City (William E. Warland, of New York City, of counsel), for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). We cannot accept Noe's patent as valid prior art. The plaintiff's strictures upon it may be well founded, and, if the case turned upon it, we should require the assistance of persons more adept in mechanics than ourselves. In short, the issue would have to be tried. As to the other three patents, about which no such question is raised, and which are understandable as they stand, we accept the request made at the argument, and treat them as though properly in evidence here.

Of these, Langslow and Kleinbaum seem to us complete anticipations, but for the fact that the devices are at the foot of the stile. Kleinbaum indeed could not have placed them anywhere else, as he disclosed a revolving door. Passing this difference for the moment, we can see no distinction in the fact that the withdrawal means is electric. Perey claimed this feature generally, and his claim would certainly cover both disclosures. Nor does it seem to us that the conversion by Kleinbaum of a mechanical into an electric check is a patentable distinction. The defendant borrows nothing of the patent in that regard, and the claim, to cover at all,

must be generalized quite beyond the disclosure.

Therefore all that is left is the fact that bolt and notch and automatic check are gathered up close to the arms, with advantage in solidity, in convenience of access, and in avoiding obstacles to the feet of passers. The defendant insists that this feature is not in the claim, but on that we cannot agree. The "single rotatable member" of. the claim contains the arms and the notches. The bolt must be close by, because it engages the notches, and the check must operate on the bolt. Whatever advantages the consolidation of all these parts contributed it seems to us fair to impute to the claim.

We will not say that such improvements in design could never make an invention. Absolutes are dangerous, especially when one is talking of invention. An immediate acceptance of the stile by the art, to .the exclusion of all older forms, might conceivably prove that what had long been craved was at length contrived. But such cases must be rare, especially when the idea has already been abundantly illustrated. Vide Williams, Beerbower, Brenizer, and Driver. One may add to solidity by diminishing the leverage, as well as by increasing the size. One may remove obstacles to the feet by raising them above the feet, and make parts more accessible by putting them where they can be reached. In all this we can see nothing but routine designing.

Thus we cannot agree that the case may hang by so slight a thread. Though the art was full of stiles, and any new design might presumptively demand some originality, there is a vanishing point even in such a setting, a point which, to be visible, at least demands evidence from more success than this invention has enjoyed. We are confirmed in our conclusion by the fact that all the references, except Ellison, on which we rely, were unknown to the Examiner.

Decree reversed.